**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Raymond P. Moore**

Civil Action No. 14-cv-02615-RM

PRESTON COUSETT,

      Applicant,

v.

PAM PLOUGHE, Warden, Skyline Corr. Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING § 2254 APPLICATION

---

Applicant, Preston Cousett, is in the custody of the Colorado Department of Corrections (CDOC) and is incarcerated at the Skyline Correctional Center in Cañón City, Colorado.  He has filed an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 8) challenging the validity of his convictions and sentence imposed in El Paso County, Colorado, District Court Case No. 04CR1331. Respondents have filed an Answer (ECF No. 32), and Applicant was afforded the opportunity to file a Reply.  Having considered the same, along with the state court record, the Court will deny the Application.

## I. BACKGROUND

In November 2007, Applicant was convicted by a state district court judge in El Paso County District Court Case No. 06CR313 of numerous counts of aggravated robbery, attempted robbery, menacing, and theft, as well as several crime of violence

counts. (ECF No. 16-1, at 6-20).  He was sentenced to an aggregate prison term of 20 years with the CDOC.  (*Id.* at 26-27).

Applicant's convictions and sentences were affirmed on direct appeal in *People v. Cousett*, No. 08CA0356 (Colo. App. Sept. 22, 2011) (unpublished) (ECF No. 16-7). The Colorado Supreme Court denied Applicant's petition for certiorari review on February 27, 2012.

On August 13, 2012, Applicant filed a state post-conviction motion for sentence reconsideration and reduction of mandatory sentence.  (ECF No. 16-1, at 24).  The state district court denied the motion on August 20, 2012.  (*Id.*).  Applicant did not appeal the order.

On November 13, 2012, Applicant filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c), which was denied summarily by the state district court on November 20, 2012.  (*Id.* at 24; *see also* ECF No. 16-4).  The Colorado Court of Appeals affirmed the district court's order in *People v. Cousett*, No. 13CA0007, Colo. App. July 31, 2014) (unpublished) (ECF No. 16-2).  Applicant did not seek certiorari review in the Colorado Supreme Court.

Applicant initiated a § 2254 proceeding in this Court on September 22, 2014. The operative pleading is the Amended Application, filed on November 13, 2014 (ECF No. 8).  Although the Amended Application purports to assert five claims, Applicant's allegations can be distilled into two claims for relief.  Applicant asserts that his convictions violated the Fourteenth Amendment Due Process Clause and his Fifth Amendment privilege against self-incrimination because his confession to police

officers was: (1) coerced; and (2) obtained in violation of his *Miranda*[1] rights, where his waiver of the right to counsel was not knowing and voluntary.

In the Pre-Answer Response, filed on November 24, 2014 (ECF No. 16), Respondents conceded that the original Application was timely-filed under the AEDPA one-year limitation period set forth in 28 U.S.C. § 2244(d).  (*Id.* at 4-7).  Respondents further conceded that Applicant exhausted state court remedies for his first claim.  (*Id.* at 15).  Respondents contended, however, that claim two was unexhausted, and procedurally barred, because Applicant no longer has a state court remedy available to him.  (*Id.* at 15-17).  In a January 20, 2015 Order, the Court dismissed claim two as procedurally barred. (ECF No. 29; ECF No. 25, at 7).

The Court addresses the merits of claim one below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal

4

quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

6

**B. *Pro Se* Litigant**

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle Applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  ANALYSIS

Applicant contends that the admission at trial of his pre-trial confession to police officers violated his Fifth Amendment and Fourteenth Amendment due process rights because the confession was coerced, through threats and promises of leniency.  (ECF No. 8, at 6).  He asserts that he only confessed towards the end of the police interview, when the detective "beg[a]n to use foul language, hit on the table, and arouse[d] violent emotion making me afraid not to confess."  (*Id.*).

The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."

U.S. CONST. amend. V.  Further, due process prohibits conviction of a defendant

based, "in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378

U.S. 368, 376 (1964).  Incriminating statements obtained by government acts, threats,

or promises that permit the defendant's will to be overborne run afoul of the Fifth

Amendment and are inadmissible at trial as evidence of guilt.  *Malloy v. Hogan*, 378

U.S. 1, 7 (1964).  Without more, however, misrepresentations, ruses, and trickery by

questioning authorities do not render an otherwise voluntary confession involuntary.

*Frazier v. Cupp,* 394 U.S. 731, 739 (1969) (interrogator's misrepresentation to suspect

that accomplice had already confessed did not render suspect's confession coerced).

The determination of whether a defendant's inculpatory statements are voluntary

requires consideration of the following factors, under a totality-of-the-circumstances

test:  (1) the age, intelligence, and education of the defendant; (2) the length of the

detention; (3) the length and nature of the questioning; (4) whether the defendant was

advised of his constitutional rights; and (5) whether the defendant was subjected to

physical punishment.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see*

*also Mincey v. Arizona*, 437 U.S. 385 (1978).   But, it cannot be said that "a defendant's

mental condition, by itself and apart from its relation to official coercion, should ever

dispose of the inquiry into constitutional "voluntariness."" *Colorado v. Connelly*, 479

U.S. 157, 164.  *See also id.* at 167 (holding that "coercive police activity is a necessary

predicate to the finding that a confession is not 'voluntary' within the meaning of the

Due Process Clause of the Fourteenth Amendment").

A.      **Factual background**

The following summary of relevant facts is taken from the Colorado Court of

Appeals' decision on direct appeal of Applicant's conviction.

> Police officers arrested defendant after they received an
> anonymous tip related to a series of crimes committed in various area
> businesses over a three-month period.  Defendant confessed to the
> crimes during a videotaped interview.  He later moved to suppress his
> statements, arguing that they were involuntary and resulted from promises
> and threats made by officers during the interrogation.  He did not argue a
> violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).
>
> At the hearing on defendant's motion, he argued that he had
> denied involvement in the crimes during the first hour and a half to two
> hours of the three-and-a-half hour interview, but that the interrogating
> officers' demeanor changed; the officers were rude, raised their voice, and
> made religious references.  Defendant further argued that this conduct
> rendered his statements involuntary in light of his mental state.  As to his
> mental state, defendant pointed to a competency evaluation performed
> three months after the interview that indicated he suffered from
> hallucinations and to his own statements earlier in the interview that "God
> is judging him," and that he saw demons, was being watched, and needed
> help.  Because the officer told him he would not get help unless he
> cooperated and told the truth, defendant claimed his mental state
> rendered him unable to voluntarily decide to talk to the officers.
>
> The trial court reviewed the videotaped interview (before the
> hearing) and denied the motion after hearing arguments of counsel.  The
> Court found that there was no police misconduct during the interview and,
> therefore, no logical reasons to suppress defendant's statements.  The
> court said that although the officers raised their voices during the
> interview, that conduct was limited and "fairly minimal" considering the
> entire interview.  The court observed that the officers did not yell, draw
> their weapons, "[g]et into [defendant's] face," or make any threats.  In
> sum, the court found that it was a "professionally done interrogation."  As
> for defendant's demeanor, the court found that he appeared eager to talk
> with the officers, repeating that he wanted to talk with them and would not
> lie to them.

(ECF No. 16-7, at 3-5).[2]

---

[2]*See also* State Court R., 4/30/07 Tr. of Suppression Hearing, at 1-10.

**B. Application of AEDPA standard of review**

The Colorado Court of Appeals evaluated Applicant's claim under a state law

"totality of the circumstances" test similar to the federal standard (ECF No. 16-7, at 5-6),

and rejected the claim on the following grounds:

> . . . [W]e have viewed the video of the interview and conclude that
> the record supports the trial court's findings regarding the absence of
> police misconduct, the manner in which the officers conducted the
> interview, and defendant's eagerness to talk to the officers. Although one
> officer spoke loudly and slapped the table for emphasis, the video shows
> that the conduct was indeed "minimal" and "very limited," as the trial court
> found. The record supports the conclusion that the officers did not
> promise or threaten defendant during the interview rather than
> defendant's contention that his will was overborne by official coercion.
> [State case citation omitted]. Therefore, we conclude defendant's
> statements were voluntary, and the trial court properly denied the motion.

(*Id.* at 6-7).

Although the ultimate question of whether the Applicant's confession was

voluntary is a legal question, subsidiary issues such as whether the police threatened

the Applicant or made promises of leniency are questions of fact. *See U.S. v. Short*,

947 F.2d 1445, 1449 (10th Cir.1991).

The state courts' factual findings that the officers did not promise or threaten

Applicant during the interview are presumed correct and Applicant has not pointed to

any clear and convincing evidence to the contrary. The Court has watched the

videotaped police interview of Applicant.[3]  The tone of the detectives was calm and

conversational for the first part of the interview, where the Applicant denied any

involvement in a robbery that had occurred the previous day. The detectives suggested

---

[3]State Court R., People's Ex 43. at trial (DVD of Applicant's police interview).

10

to Applicant that if he was not truthful with them about the robbery, they would advise the District Attorney's office that he was a liar, who had shown no remorse for his crimes.  The detectives further told Applicant that this was his only opportunity to explain his side of the story, and that they could not get him the "help he needs" unless they knew the truth.  Approximately 100 minutes into the interview, one of the detectives showed Applicant a black ski mask that had been recovered by police officers from Applicant's apartment.  The ski mask had eye slits cut into it.  Applicant admitted that the ski mask was his and that the only reason that eye slits would have been cut into it was for the purpose of committing a robbery.  At that point, the lead interviewer's demeanor changed briefly.  He raised his voice, his questions became more pointed and confrontational, he accused the Applicant of "playing him for a fool," used a few mild expletives, and slapped the table once or twice for emphasis.  The detective also told Applicant that witnesses had described him wearing the ski mask and that the detective had "enough" to file criminal charges against him for aggravated robbery.[4]  Applicant then confessed to the robbery, as well as to six other robberies during the ensuing two hours.  After Applicant confessed to the first robbery, the detectives resumed a conversational tone for the remainder of the interview.  Nothing in the interrogation is indicative of an involuntary confession or error in the state court conclusions.

The Colorado Court of Appeals' findings that the detectives did not threaten Applicant or make him any promises are consistent with the evidence presented in the

---

[4]State Court R., People's Ex. 43, DVD of Police Interview of Applicant.

state court proceeding.  Moreover, the other *Schneckloth* factors indicate that the

Applicant's confession was voluntary.  Applicant was provided with food and drink at the

beginning of the interview and was not hand-cuffed.  The officers did not injure

Applicant physically or deny him physical necessities.  In addition, Applicant was lucid

and responsive throughout the interview.  Nothing that occurred during the interview

suggests that Applicant's level of intelligence or education rendered his statements to

the police involuntary, or that he suffered from a mental impairment that was exploited

by the detectives.  Further, the lead detective told Applicant at least twice during the

interview that Applicant did not have to talk to him and could stop talking at any time,

but Applicant never stated or gave indication that he wanted to conclude the interview.

And, finally, Applicant was given a *Miranda* advisement at the beginning of the

interview.  He indicated he understood his rights and then waived them. Applicant did

not challenge the validity of that waiver in his direct appeal proceeding.

Under the totality of the circumstances of the police interview, the Court finds

that the Colorado Court of Appeals' conclusion that Applicant's confession was

voluntary, and that his will was not overborne by the conduct of the police, was not

contrary to, or an unreasonable application of Supreme Court law.  The facts of this

case are not on point with other cases in which the Supreme Court has found that

coercive police conduct invalidated a defendant's confession.  *See Connelly,* 479 U.S.

at 163-164 at n. 1 (collecting cases where circumstances warranted Court's conclusion

that police coercion was present).  Moreover, even if the Court were to find fault with

some of the detectives' conduct during the interview, it cannot be said that the state

appellate court's determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Richter*, 131 S.Ct. at 786-87. As a result, Applicant cannot is not entitled to federal habeas relief.

## IV.  ORDERS

Accordingly, it is ORDERED:

1.      The Amended Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 8) is DENIED and this case is DISMISSED on the merits.

2.      No certificate of appealability will issue because Applicant has not made a substantial showing that jurists of reason would find it debatable whether the jurisdictional and procedural rulings are correct and whether the Application states a valid claim of the denial of a constitutional right.

Dated March 19, 2015, in Denver, Colorado.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge